UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRENCH LAUNDRY PARTNERS, LP DBA THE FRENCH LAUNDRY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HARTFORD FIRE INSURANCE COMPANY,<br><br>Defendant. | Case No. 20-cv-04540-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 58 |

This is one of many insurance disputes filed in the wake of the COVID-19 pandemic challenging insurance companies' denial of coverage for economic losses flowing to businesses following regional shelter-in-place orders. Plaintiffs here own and operate the restaurants The French Laundry and Bouchon Bistro in Napa County California. They bring a declaratory judgment action against their insurer Hartford Fire Insurance Company seeking a declaration that the County's March 18, 2020 shelter-in-place order triggered coverage under Plaintiffs' insurance policy. Hartford moves to dismiss arguing that the policy provides no coverage for Plaintiffs' economic losses as a matter of law.[1] (Dkt. No. 58.) Having considered the parties' briefs and the relevant legal authority, the Court determines that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the April 29, 2021 hearing, and GRANTS the motion to dismiss.

**BACKGROUND**

Plaintiffs' restaurants in Napa County, California were forced to shut down after the Napa County Health Officer issued an order on March 18, 2020 directing "all individuals living in the county to stay at home except that they may leave to provide or receive certain essential services

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 16 & 19.)

or engage in certain essential activities" (hereafter "the Order"). (First Amended Complaint, Dkt. No. 56 at ¶ 57.)  The Order required all non-essential businesses, including restaurants, to cease operations except for delivery and takeout. (*Id.* at ¶¶ 57, 62.)  Access to Plaintiffs' business was impacted for several months and Plaintiffs had to furlough over 300 employees. (*Id.* at ¶¶ 63, 66.)

Plaintiffs have an insurance contract with Hartford for indemnification for losses, including business income losses. (*Id.* at ¶ 37.) Plaintiffs' premiums include additional coverage "under the <u>Property Choice – Specialized Property Insurance Coverages for Restaurants – Deluxe and Property Choice Business Income and Extra Expense Form – Additional Coverages</u> in the event of business closures by viral contamination and order of a Civil Authority" (hereafter the "Deluxe Form").  (*Id.* at ¶ 43.) The Policy covers "the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the scheduled premises is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of plaintiffs' scheduled premises."  (*Id.* at ¶ 46.)  Further, the "policy's Property Choice Deluxe Form specifically extends coverage to direct physical loss or damage caused by virus under the viral contamination additional coverage." (*Id.* at ¶ 48.)

Following Plaintiffs' restaurants' shutdown, Plaintiffs filed a claim with Hartford that was denied. Plaintiffs thereafter filed this declaratory judgment action under California Code of Civil Procedure Section 1060 in the Napa County Superior Court. (Dkt. No. 1-2.)  Hartford removed the action to this Court based on diversity jurisdiction.  The Court thereafter denied Plaintiffs' motion to remand.  Plaintiffs then filed the now operative First Amended Complaint seeking a declaration (1) "that the Order by [the Napa County Health Officer], in her official capacity, constitutes a prohibition of access to plaintiffs' Insured Premises"; (2) "that the prohibition of access by a Civil Authority is specifically prohibited access as defined in the Policy"; (3) "that the Order triggers coverage because the policy does not include an exclusion for a viral pandemic and extends coverage for loss or damage due to viral contamination"; (4) "that the policy provides coverage to plaintiffs for any current and future civil authority closures of restaurants in Napa County due to physical loss or damage from the Coronavirus under the Civil Authority provision parameters"; (5) "that the policy provides business income and property coverage due to the viral contamination

2

of COVID-19, which has caused a physical loss or damage to the insured property and property in its immediate area"; and (6) "that [Hartford is] estopped from denying viral contamination coverage due to [its] regulatory admissions or providing illusory coverage." (FAC, Prayer for Relief ¶¶ 1-6.) This motion to dismiss followed. (Dkt. No. 58.)

## DISCUSSION

Hartford insists that Plaintiffs' claim fails as a matter of law because the Policy's Virus Exclusion bars any coverage for Plaintiffs' losses and Plaintiffs have not shown that any exception to the exclusion applies.

### A. The Policy Bars Coverage

The Policy's Property Choice Business Income and Extra Expense Coverage Form - Additional Coverages extends coverage "to the actual loss of Business Income" sustained "when access to your 'Scheduled Premises' is specifically prohibited by order of a civil authority."[2] (Dkt. No. 8-1 at 94.) "Covered Causes of Loss" is separately defined as "direct physical loss or direct physical damage that occurs during the Policy Period and in the Coverage Territory unless the loss or damage is excluded or limited in this policy." (*Id*. at 115.) Plaintiffs allege that their "business property, and that of other property in the immediate area, experienced a physical loss or damage due to the [COVID-19] viruses propensity to adhere to surfaces." (FAC at ¶ 65.) In addition, "the Orders affecting the plaintiffs were issued in part because of COVID-19's impact on property and its presence in Napa County." (*Id*. at ¶ 64.)

The Policy includes several specified exclusions, among these, a Virus Exclusion, which states in part:

> **B. EXCLUSIONS**
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage:

---

[2] The Court may consider the Policy's content under the incorporation by reference doctrine. *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 n.1 (9th Cir. 2009) ("A court may consider documents, such as the insurance policies, that are incorporated by reference into the complaint.")

3

> g. **"Fungus", Wet Rot, Dry Rot, Bacteria or Virus**
>
> Presence, growth, proliferation, spread or any activity of "fungus," wet rot, dry rot, bacteria or virus.
>
> But if direct physical loss or direct physical damage to Covered Property by a "Specified Cause of Loss" results, we will pay for the resulting loss or damage caused by that "Specified Cause of Loss".
>
> This Exclusion does not apply:
>
> (1) When "fungus," wet rot, dry rot, bacteria or virus results from fire or lightning; or
>
> (2) To the extent that coverage is provided in the Additional Coverage(s) - "Fungus," Wet Rot, Dry Rot, Bacteria or Virus - Limited Coverage with respect to loss or damage by a cause of loss other than fire or lightning.

(Dkt. No. 8-1 at 115-116.)  The Court concludes—as a multitude of other courts have—that virus exclusions such as this exclude coverage for business losses related to COVID-19 as alleged here. *See Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-CV-04434-JSC, 2020 WL 7342687, at *2 (N.D. Cal. Dec. 14, 2020) (collecting cases).  In particular, the FAC alleges that COVID-19 is the direct or indirect cause of Plaintiffs' economic loss and the Virus Exclusion bars coverage under these circumstances under its plain and unambiguous language.  *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995), as modified on denial of reh'g (Oct. 26, 1995) ("The clear and explicit meaning of the [policy] provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage [ ] controls judicial interpretation.") (internal quotations and citations omitted).

Plaintiffs do not appear to dispute this conclusion.  Instead, Plaintiffs insist that they purchased additional coverage in the Deluxe Form which covers their losses. Plaintiffs point to the following provisions from the "Additional Coverages" section of the Deluxe Form:

> 15. "FUNGUS", WET ROT, DRY ROT, BACTERIA AND VIRUS - LIMITED COVERAGE
>   a. The coverage described below only applies when the "fungus", wet or dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.
>     (1) A "specified cause of loss" other than fire or lightning;
>     (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises; or
>     (3) Flood, if the Causes of Loss Flood endorsement applies to the affected premises.
>   b. We will pay for loss or damage by "fungus", wet rot, dry rot, bacteria and virus. As used in this Limited Coverage, the term loss or damage means:
>     (1) Direct physical loss or direct physical damage to Covered Property caused by "fungus", wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungus", wet rot, dry rot, bacteria or virus;
>     (2) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet rot, dry rot, bacteria or virus; and
>     (3) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet rot, dry rot, bacteria or virus is present.

(Dkt. No. 8-1 at 70.)

First, Plaintiffs argue that the "Deluxe form [] extend[s] viral contamination coverage independent of a specified cause of loss, equipment breakdown, or flood." (Dkt. No. 62 at 20:18-19.) Plaintiffs insist that a "contrary reading would undermine the purpose for the policy extension itself" and argue that clause 15(a) must be read independently from clause 15(b). (*Id*. at 21:1-7.) Plaintiffs' reading is unsupported by the policy language itself or the rules of contract interpretation. Section 15(a) clearly states that **"*[t]he coverage described below only** applies when the 'fungus', wet or dry tot, bacteria or virus *is the result of one or more of the following causes* that occurs during the policy period…a 'specified cause of loss'….; Equipment Breakdown

5

Accident….; or [] Flood…" (Dkt. No. 8-1 at 70.) Plaintiffs do not argue that their request for coverage fits within one of these categories; instead, Plaintiffs maintain that these categories are not exclusive. But this interpretation is unsupported by the Policy's plain language. *Waller,* 11 Cal. 4th at 18. If the coverage "described below" is not clause 15(b) then clause 15(a) has no meaning.

Second, Plaintiffs maintain that because Hartford included "state specific endorsements modifying the coverage terms and conditions for different locations through-out the nation" which barred coverage for "loss or damage caused by or resulting from any virus . . .that induces or is capable of inducing physical distress, illness or disease," but did not use that same language for other states (including California) the Deluxe Form "extends coverage for loss or damage caused by a virus independent of a specified cause of loss." (Dkt. No. 62 at 21-22.) This argument, as the one above, is illogical and untethered to the Policy's plain language.

Third, Plaintiffs maintain that interpreting the policy to bar coverage here is inconsistent with Hartford's "prior admissions." But Plaintiffs have not identified any statements made by Hartford which are inconsistent with its current position. In the FAC, Plaintiffs vaguely allege that "the insurance industry and HARTFORD DEFENDANTS made conflicting statements to the [California Department of Insurance] to avoid a rate decrease for the removal of pandemic risk" and that "HARTFORD DEFENDANTS and the insurance industry intentionally sowed doubts about whether a virus was similar to other 'contaminants' to be included within the same risk, thereby dodging a rate decrease and lowering their risk." (FAC at ¶¶ 24-25.) Plaintiffs, however, have neither identified any specific statements nor any statements made by Hartford as opposed to the "insurance industry." *See ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, No. CV 20-4238, 2021 WL 131282, at *8 (E.D. Pa. Jan. 14, 2021) (rejecting a similar argument because "[e]ven assuming that the ISO's statements could be imputed to Twin City, Omega has not alleged that Twin City is now contradicting the statements the ISO made to state regulatory bodies because it did not identify any particular statements the ISO made to state regulatory agencies.").

Fourth, Plaintiffs argue that interpreting the Policy so as to bar coverage here renders the Policy illusory; that is, that coverage for a virus would never be possible if the virus had to be the

6

result of another specified loss. The Policy defines "Specified Causes of Loss" as "'Specified Causes of Loss' means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; 'Sinkhole Collapse'; 'Volcanic Action'; falling objects; weight of snow, ice or sleet; water damage, 'Sprinkler Leakage'; 'Theft'; or 'Building Glass' breakage." (Dkt. No. 8-1 at 90.) Plaintiffs insist that viruses do not "'result from' lightning, explosions, falling objects or water damage." (Dkt. No. 62 at 23:24.) This Court rejected a similar argument by an insured in *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc*., No. 20-CV-04434-JSC, 2020 WL 7342687, at *4 (N.D. Cal. Dec. 14, 2020), relying *on Curtis O. Griess & Sons, Inc. v. Farm Bureau Ins. Co. of Nebraska*, 247 Neb. 526, 528 N.W.2d 329, 331 (1995), wherein the Supreme Court of Nebraska determined that a tornado carried a pseudorabies virus to the plaintiff's swine "insured by defendant insurance company for physical loss caused directly by an applicable peril," where windstorms were covered perils under the policy. The same reasoning applies here. Plaintiffs' attempt to distinguish this Court's holding in *Franklin* and its interpretation of *Curtis* is unavailing. The policy language in *Franklin* was substantively identical—both offer coverage if the virus is the result of a specified loss which is a separately defined term.

An insurance policy provision is only illusory where it results in a "complete lack of any policy coverage." *Secard Pools, Inc. v. Kinsale Ins. Co*., 318 F. Supp. 3d 1147, 1153 (C.D. Cal. 2017), aff'd sub nom. *Secard Pools Inc. v. Kinsale Ins. Co*., 732 F. App'x 616 (9th Cir. 2018); *see also Young v. Illinois Union Ins. Co*., No. C07-05711 SBA, 2008 WL 5234052, at *1 (N.D. Cal. Dec. 15, 2008), aff'd, 366 F. App'x 777 (9th Cir. 2010) (stating that "[i]n order for a policy to be deemed illusory, it must afford no coverage whatsoever" and a disputed policy exclusion "d[id] not render the policy illusory"); *Scottsdale Ins. Co. v. Essex Ins. Co*., 98 Cal. App. 4th 86, 95, 119 Cal.Rptr.2d 62 (2002) ("An agreement is illusory and there is no valid contract when one of the parties assumes no obligation") (citation omitted) (emphasis added); *Medill v. Westport Ins. Corp*., 143 Cal. App. 4th 819, 836 (2006) (finding that insurance policy's exclusion did not render coverage illusory where "not every lawsuit that could conceivably be brought against the [insured] would necessarily arise out of [the exclusion]"). "[T]he mere *possibility of some* coverage is

7

enough" to defeat Plaintiffs' argument that coverage under the Deluxe Form Limited Virus Coverage is illusory, *Secard Pools*, 318 F. Supp. 3d at 1153 (original emphasis), and here the provision provides "the possibility of some coverage that is not excluded," *Crusader Ins. Co. v. Burlington Ins. Co.*, No. CV 1905371 PSG (PLAx), 2020 WL 4919387, at *10 (C.D. Cal. June 12, 2020).

Fifth, Plaintiffs' argument that Hartford's "newfound" interpretation of the Deluxe Form renders the Policy language ambiguous is unavailing. A policy provision is ambiguous if it is "capable of two or more constructions, both of which are reasonable." *Waller*, 11 Cal. 4th at 18. Plaintiffs have not identified any ambiguities in the Deluxe Form Limited Virus Coverage—it states that coverage is available if it is a result of a specified cause of loss which is separately defined. While regrettable for Plaintiffs here, that the coverage may be narrow is not a basis to find the Policy language ambiguous. *See Nat'l Ins. Underwriters v. Carter*, 17 Cal. 3d 380, 386 (1976) ("an insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected.") (internal quotations and citation omitted).

Accordingly, Plaintiffs have not met their burden of plausibly alleging that their business losses are covered under the Deluxe Form's Limited Virus Coverage. *See Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1191 (1998), as modified on denial of reh'g (Oct. 14, 1998).

**B. Plaintiffs' Estoppel Arguments Fail**

Plaintiffs next insist that Hartford is estopped from denying coverage based on representations that it made to the California Department of Insurance. Plaintiffs refer to both the doctrines of regulatory estoppel and judicial estoppel. Neither applies here.

California courts reject the regulatory estoppel doctrine. *See ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.,* 17 Cal. App. 4th 1773, 1797 n.39 (1993), as modified (Sept. 21, 1993) ("Some jurisdictions—but not California—allow extrinsic evidence even where contract terms are unambiguous .... [a]nd some jurisdictions have relied on an 'estoppel' or regulatory history rationale not necessarily related to any textual ambiguity."); *see also Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1267 (9th Cir. 2017) (holding that a federal trial court is bound by a

state appellate court's decision unless there is "'persuasive data' that the California Supreme Court would reach a different conclusion") (internal citation omitted).  *ACL* has not been overruled as Plaintiffs suggest.  In *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 671 (1995), as modified on denial of reh'g (Aug. 31, 1995), the California Supreme Court relied upon drafting history to help determine the meaning of an ambiguous term.  Likewise, in *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 641-46 (2003), as modified on denial of reh'g (Sept. 17, 2003), the court looked at the historical background of a pollution exclusion to determine its current meaning.  Plaintiffs have identified no case—and this Court is unaware of any—holding that regulatory estoppel applies under California law; rather, the rule in California remains that "[w]hatever else extrinsic evidence may be used for, it may not be used to show that words in contracts mean the exact opposite of their ordinary meaning." *ACL,* 17 Cal. App. 4th at 1791; *see also Boxed Foods Co., LLC v. California Cap. Ins. Co.*, No. 20-CV-04571-CRB, 2020 WL 6271021, at *6 (N.D. Cal. Oct. 26, 2020), as amended (Oct. 27, 2020) ("Even if ISO mispresented the purpose and scope of its Virus Exclusion, Plaintiffs' theory requires the Court to construe Defendant's plain, unambiguous Virus Exclusion to mean the exact opposite of its ordinary meaning. Neither California law nor federal courts interpreting Virus Exclusions, permit such an outcome.").

        Judicial estoppel is likewise inapplicable here. Judicial estoppel "applies when (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake*." In re Marriage of Taschen*, 134 Cal. App. 4th 681, 689–90 (2005) (internal citation and quotation marks omitted). Plaintiffs do not argue—because they cannot—that the regulatory proceedings before the California Department of Insurance were quasi-judicial. *See Wood v. Pub. Utilities Comm'n*, 4 Cal. 3d 288, 292 (1971) ("In adopting rules governing service and in fixing rates, a regulatory commission exercises legislative functions delegated to it and does not, in so doing, adjudicate vested interests or render quasi-judicial decisions which require a public hearing for affected

1 ratepayers.").

**C. Plaintiffs' Other Arguments**

Plaintiffs make two final arguments. First, that dismissal at this stage would be premature and that the Court should allow discovery. In particular, Plaintiffs allege that "discovery is expected to produce other versions of the viral coverage provision that uses more restrictive language showing, by contrast, that the Deluxe form in this case afforded broader coverage than Hartford contends today and previously admitted to the CA DOI" and that in 2006 Hartford recognized "the risks of pandemic to its property and casualty insurance claims." (Dkt. No. 62 at 26:12-16.)

California courts consider extrinsic evidence even of unambiguous contracts when the evidence "is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal. 2d 33, 37 (1968). However, an insurer moving to dismiss based on policy language may "establish conclusively that this language unambiguously negates beyond reasonable controversy the construction alleged in the body of the complaint*." Palacin v. Allstate Ins. Co*., 119 Cal. App. 4th 855, 862 (2004). The Court must conditionally consider extrinsic evidence "alleged in the complaint, to determine if it would be relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *George v. Auto. Club of S. Cal*., 201 Cal. App. 4th 1112, 1122 (2011). Even if discovery were to turn up earlier more restrictive versions of the virus coverage provision or evidence that Hartford recognized the risks of a viral pandemic, it would not alter the Court's conclusion that the agreement between the parties here unambiguously precludes coverage for Plaintiffs' economic losses.

Second, Plaintiffs note that the Court is required to follow California law and urge the Court to follow the California trial court's decision in *Goodwill Ind. of Orange County, California v. Phil Indem. Ins. Co*., No. 30-2020-01169032-CU-IC-CXC. (Dkt. No. 63-1.) Plaintiffs are correct that this Court is bound by California law and must "attempt to determine how the California Supreme Court might decide the issue." *Ileto v. Glock Inc*., 349 F.3d 1191, 1200 (9th Cir. 2003). *Goodwill*, however, involved a different question than that presented here: whether

10

COVID-19 could cause a "direct physical loss" to property—not, as here—whether a Virus Exclusion applied to bar coverage.  Thus, the Court has applied the relevant California law regarding interpreting unambiguous insurance contracts.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED.  While the Court acknowledges the havoc that the COVID-19 pandemic and consequent shelter-in-place orders have caused businesses throughout this country and the world, the Court cannot read an ambiguity into an insurance contract where none exists.  Because Plaintiff previously filed an amended complaint, and because the Virus Exclusion bars coverage here as a matter of law, leave to amend would be futile.  *See Hartmann v. Cal. Dep't of Corr. & Rehab*., 707 F.3d 1114, 1130 (9th Cir. 2013).  Judgment will be entered by separate order.

This Order disposes of Docket No. 58.

**IT IS SO ORDERED.**

Dated: April 27, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

11